# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Filed: May 14, 2019

No. 17-5049

CITIZENS FOR RESPONSIBILITY AND ETHICS IN
WASHINGTON AND MELANIE T. SLOAN,
APPELLANTS

v.

FEDERAL ELECTION COMMISSION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-02038)

———

On Petition for Rehearing En Banc

———

Before: GARLAND, *Chief Judge*; HENDERSON,
ROGERS, TATEL, GRIFFITH***, SRINIVASAN, MILLETT,
PILLARD***, WILKINS**, KATSAS, and RAO*, *Circuit Judges*

## **O R D E R**

Appellants' petition for rehearing en banc and
the response thereto were circulated to the full court, and a
vote was requested. Thereafter, a majority of the judges
eligible to participate did not vote in favor of the petition.
Upon consideration of the foregoing, it is

2

**ORDERED** that the petition be denied.


### Per Curiam


                              **FOR THE COURT:**
                              Mark J. Langer, Clerk

              **BY**:   /s/

                              Ken R. Meadows
                              Deputy Clerk



\* Circuit Judge Rao did not participate in this matter.

\*\* Circuit Judges Pillard  and Wilkins would grant the petition for rehearing en banc.

\*\*\* A statement by Circuit Judge  Griffith, concurring in the denial of rehearing en banc, is attached.

\*\*\* A statement by Circuit Judge Pillard, dissenting from the denial of rehearing en banc, is attached.

GRIFFITH, *Circuit Judge*, concurring in the denial of rehearing en banc:

The Federal Election Campaign Act (FECA) requires that "[a]ll decisions of the" Federal Election Commission (FEC) "with respect to the exercise of its duties and powers under the provisions of this Act shall be made by a majority vote of the members of the Commission." 52 U.S.C. § 30106(c). Because the FEC is comprised of three Democratic appointees and three Republican appointees, *see id.* § 30106(a)(1), FECA thus requires that all actions by the Commission occur on a bipartisan basis. The statute does not instruct how to handle a "deadlock vote," that is, a vote in which three members wish to proceed on a given enforcement action and three oppose such action. This situation, as one might expect, occurs with some frequency. We and the FEC have, however, provided guidance. The FEC has said that if "the Commission lacks majority support for proceeding with a matter," "the Commission will dismiss" it as an "exercise of its prosecutorial discretion." Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12,545, 12,546 (Mar. 16, 2007). As for us, because the initial deadlock triggered this dismissal, we review—and treat as controlling—the rationale offered by the Commissioners who voted not to proceed. *Common Cause v. FEC*, 842 F.2d 436, 449 (D.C. Cir. 1988). The majority opinion here added one more parameter: deadlock votes premised on prosecutorial discretion are insulated from judicial review, with limited exceptions. *Citizens for Responsibility and Ethics in Washington v. FEC* (*CREW*), 892 F.3d 434, 438-42, 440 n.9, 441 n.11 (D.C. Cir. 2018).

Given FECA's silence on deadlocks, it is no surprise that the statute also does not instruct how to differentiate between a deadlock vote that prompts a dismissal and a vote by four or more Commissioners to dismiss the action outright. Should we treat a deadlock-then-dismissal and an outright dismissal by

2

four or more Commissioners differently, even when both rest on identical "prosecutorial discretion" grounds? The purposes underlying FECA would suggest as much, as the fourth vote—necessarily from a Commissioner who crossed party lines—makes us less worried about partisan gamesmanship. *See* 52 U.S.C. § 30106(a)(1), (c); *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981). To that end, the majority's opinion, which indicates that when three Commissioners invoke "prosecutorial discretion" they foreclose both the FEC enforcement action and our review of the decision not to proceed, certainly seems contrary to Congress's intent.

Then again, nothing in FECA provides an easy way to distinguish these two types of dismissals. Maybe, in keeping with FECA's bipartisan emphasis and the FEC's guidance, only four or more Commissioners may invoke "prosecutorial discretion" to dismiss a case. *See* FEC, *Guidebook for Complainants and Respondents on the FEC Enforcement Process* 12 (May 2012), http://fec.gov/em/respondent_guide.pdf ("Pursuant to an exercise of its prosecutorial discretion, the Commission may dismiss a matter when, in the opinion of *at least four Commissioners*, the matter does not merit further use of Commission resources." (emphasis added)). Or maybe any Commissioner can invoke this reasoning, but it is only unreviewable pursuant to *Heckler v. Chaney*, 470 U.S. 821 (1985), when articulated by four or more. But even assuming this kind of rationale is reviewable in some instances, the scope and content of that review remains unclear. Is it unlimited? Cabined to situations in which the Commissioners incorrectly interpret and apply FECA? Or perhaps this is just a hole in the statutory scheme that only Congress can fill.

3

While these questions are important, this is not the case to decide them. There is a factual dispute over whether the three Commissioners who voted not to proceed even made a legal decision. Neither party argued before the panel that decisions rooted in prosecutorial discretion are insulated from our review; indeed, the FEC conceded that "Commission decisions not to prosecute . . . remain subject to judicial review." FEC Br. 27. Nor is it clear how a rule articulated in this context might play out elsewhere. What if the Commission split 3-3, refused to dismiss the case, and 120 days later, the petitioner brought suit in this court. *See* 52 U.S.C. § 30109(a)(8)(A). What standard applies? Or what if we are faced with a deadlock-then-dismissal and the three naysayers explain that because a violation occurred but the statute of limitations is about to expire, they exercised their prosecutorial discretion not to proceed. Can we review this exercise of prosecutorial discretion premised on a legal determination? *See CREW*, 892 F.3d at 441 n.11, 441-42 (leaving open the possibility that "if the Commission declines to bring an enforcement action on the basis of its interpretation of FECA, the Commission's decision is subject to judicial review" but noting that we may not "carv[e] reviewable legal rulings out from the middle of non-reviewable actions" (citation and quotation marks omitted)).

It is unlikely that a future case will implicate—or answer—all of these concerns. But I hope that in the right case, with adequate briefing from interested parties, we can better grapple with these questions and the consequences of a potential holding. Perhaps at that time, we will need to reconsider the majority's holding en banc; perhaps not. For now, however, we have before us only these issues, briefs, and parties. And on this record, I do not think rehearing en banc is warranted.

PILLARD, *Circuit Judge*, dissenting from denial of rehearing en banc:

Who pays for the messages we hear about candidates for federal office? Federal election law gives the public a right to know. But today we let stand a divided panel decision that effectively scuttles that law. Congress established the Federal Election Commission at the front line of campaign finance law enforcement. To avoid agency capture, it made the Commission partisan balanced, allowing no more than three of the six Commissioners to belong to the same political party. That balance created a risk of partisan reluctance to apply the law, so Congress provided for judicial review of non-enforcement, and citizen suits to press plausible claims the Commission abandons. But the decision we leave in place today eliminates those legal checks against enforcement-shirking. It empowers any partisan bloc of the Commission to cut off investigation and stymie review of even the most serious violations of federal campaign finance law by uttering "magic words" of enforcement discretion.

The panel majority held that the Commission's refusal-by-deadlock to investigate a complaint against a claimed political committee, the Commission on Hope, Growth and Opportunity (CHGO), was an exercise of "unreviewable prosecutorial discretion." *Citizens for Responsibility & Ethics in Washington v. FEC* (*CREW*), 892 F.3d 434, 438 (D.C. Cir. 2018). That broad holding is sufficiently wrong and important that it warrants *en banc* review. The majority opinion contravenes the statute and binding precedent, undercuts the design Congress devised to avoid both partisan domination and partisan deadlock in the Commission's enforcement process, and has already been applied by the Commission and district court to truncate other cases.

The Federal Election Campaign Act (FECA) invites "any person" to file a complaint with the Commission (FEC or

2

Commission), and provides that the Commission "*shall* make an investigation" of any complaint supported by "reason to believe" that the statute is violated. 52 U.S.C. § 30109(a)(2) (emphasis added). It further provides that "any party aggrieved" by an order dismissing a complaint, or by a failure of the Commission to act on a complaint within 120 days, "may file a petition" for judicial review by this court. *Id*. § 30109(a)(8)(A). If the court holds that "the dismissal of the complaint or the failure to act is contrary to law," the Commission has 30 days to conform, failing which the complainant may file a civil action to remedy the alleged violation. *Id*. § 30109(a)(8)(C). In *Orloski v. FEC*, we held that a "decision is 'contrary to law' if (1) the FEC dismissed the complaint as a result of an impermissible interpretation of the Act, or (2) if the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion." 795 F.2d 156, 161 (D.C. Cir. 1986) (citation omitted).

If a partisan bloc of the FEC can thwart a case like this one, FECA's controls on campaign money, including the political-committee registration and disclosure requirements here, are not worth much. CHGO sprang into existence in 2010 as the brainchild of political operatives. Internally and to potential donors it described its mission as collecting money to spend on federal campaigns while making sure that donor names would be kept secret. The group falsely claimed tax-exempt status, raised and spent millions of dollars to influence campaigns, and never registered as a political committee or reported its contributors or spending. When it learned of an FEC complaint by Citizens for Responsibility and Ethics in Washington (CREW), CHGO responded with evasion and dissimulation and, by early 2012, scurried to dissolve itself. The FEC's Office of General Counsel concluded that CHGO easily met the FECA threshold for political-committee status and

3

recommended three times that the Commission find "reason to believe" that CHGO was an unregistered political committee— a preliminary finding that would have authorized a full investigation. The Commissioners persistently deadlocked. CREW filed in federal court claiming the blocking Commissioners' position was contrary to law. I believe the law entitled CREW to a judicial ruling on that question.

In the panel majority's view, however, three out of six Commissioners have peremptory enforcement discretion to block investigation of a complaint and cut off judicial review, even where there may be ample "reason to believe" that FECA was violated. It held that the blocking Commissioners' mere assertion of discretion—invoking concerns like the best use of agency resources and an expiring statute of limitations— eliminates our review to determine whether the asserted discretion was itself "contrary to law." And it treated an invocation of discretion as a shield against review of the blocking Commissioners' *non*-discretionary errors as well.

Under settled precedent, the Commission's enforcement discretion cannot block review of legal errors. That means that courts may review the kinds of errors CREW points to in the blocking Commissioners' conclusions about the statute of limitations and their own equitable enforcement powers against a dissolving CHGO, on which the blocking Commissioners purported to rest their discretion. Appellant's Br. 44-45. And courts may review errors CREW identifies in the grounds those Commissioners gave for refusing to investigate CHGO as a possible "political committee" in the face of direct admissions and circumstantial evidence of its "major purpose" to win Senate seats. *Id.* at 49. The panel majority's contrary holding conflicts with the statute's terms, structure, and purpose; with the Supreme Court's decision in *FEC v. Akins*, 524 U.S. 11 (1998); and with our decisions in *Chamber of Commerce v.*

4

*FEC*, 69 F.3d 600 (D.C. Cir. 1995), *Democratic Congressional Campaign Committee v. FEC* (*DCCC*), 831 F.2d 1131 (D.C. Cir. 1987), and *Orloski*, 795 F.2d 156.

Our *en banc* court will have to resolve these conflicts.  I would have done so here, despite some questions about the way the petition was framed.  *See* Concurring Op. 3.  The panel's significant disregard of circuit precedent calls for prompt correction.  In the meantime, to the extent the majority opinion conflicts with earlier decisions, it is not binding.  *See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011).  Our district courts and future panels must continue to follow precedent the panel would sweep aside, including *Akins*, *Chamber of Commerce*, *DCCC*, and *Orloski*.

\*    \*    \*

Given the contrary message of the panel majority, embraced by the blocking Commissioners and at least one district court, it is worth pinpointing how the majority errs.  In brief, it defies settled law in two ways:  First, it holds that dismissals based on the FEC's exercises of enforcement discretion are entirely beyond our review—a position contrary to FECA's express terms and judicial precedent.  And, second, it deems any invocation of enforcement discretion, even when accompanied by reasons that are contrary to law, sufficient to shield those legal defects from review.  Together, those holdings allow a non-majority of Commissioners to insulate any decision from the judicial review that FECA provides, just by invoking "prosecutorial discretion."  The majority errs in a third way by treating a deadlock in the statutorily required vote *not* as a vote of "no reason to believe" FECA was violated, subject to judicial review as such, but as an operative (and unreviewable, it says) exercise of enforcement discretion.

In the interest of clarity, let me spell out these three points.

5

*First*, the majority held that the presumption in *Heckler v. Chaney*, 470 U.S. 821, 64 (1985), that agency non-enforcement actions are unreviewable "controls this case," via the panel's assertion that nothing in FECA "overcomes the presumption against judicial review." *CREW*, 892 F.3d at 439. That assertion conflicts with the statutory text, the Supreme Court's holding in *Akins*, and several of our circuit decisions.

FECA's authorization of judicial review differs from typical provisions for review of agency decisions. Congress acknowledged that the FEC's politically balanced composition, designed to avoid partisan domination, created a risk of political deadlock and non-enforcement of the law. To prevent any reluctant three-member bloc of a divided Commission from defeating enforcement of FECA by scuttling plausible complaints, the Act contains an unusual provision for judicial review:

> Any party aggrieved by an order of the Commission dismissing a complaint filed by such party . . . or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia.

52 U.S.C. § 30109(a)(8)(A). The reviewing court decides whether the dismissal was "contrary to law." *Id.* § 30109(a)(8)(C). If the Commission does not take up the case again within thirty days of a ruling that the dismissal was contrary to law, the aggrieved party may bring a citizen suit to enforce FECA. *Id.* The Commission thus retains its primacy as enforcer of federal campaign finance law, with complainants' petitions for review of dismissals or failures to

6

act and, if necessary, citizen suits providing judicial checks against passivity or stonewalling.

The Supreme Court in *Akins* accordingly held *inapplicable* to the FEC *Chaney*'s rebuttable presumption against judicial review of agency non-enforcement decisions, declaring: "We deal here with a statute that explicitly indicates the contrary." 524 U.S. at 26. The Court confirmed the common-sense conclusion we had already drawn. As Judge Silberman described it in the *Akins* opinion for our *en banc* court, Section 30109(a)(8) is "an unusual statutory provision which permits a complainant to bring to federal court an agency's refusal to institute enforcement proceedings." 101 F.3d 731, 734 (D.C. Cir. 1996) (distinguishing *Chaney*), *vacated on other grounds*, 524 U.S. 11 (1998); *see also Chamber of Commerce*, 69 F.3d at 603 (describing FECA as "unusual in that it permits a private party to challenge the FEC's decision *not* to enforce"). Indeed, the FEC acknowledged to the panel here that "Commission decisions not to prosecute, unlike those of most agencies, remain subject to judicial review." Appellee Br. 27.

The panel majority attempted to distinguish *Akins* by saying that "[t]he only issue the Court decided in *Akins* dealt with standing." *CREW*, 892 F.3d at 438 n.6. But *Akins*' standing holding is, *a fortiori*, support for reviewability here. *Akins* squarely rejected the contention that, because the FEC's "decision not to undertake an enforcement action" was an action "not subject to judicial review," the court could not redress the claim of injury. *Akins*, 524 U.S. at 26. In recognizing that the injury would be redressable in response to a private "complain[t] that the agency based its decision upon an improper legal ground," the Court necessarily (and unequivocally) decided that the non-enforcement decision by the FEC *was* subject to judicial review. *Id.* at 20, 25-26.

7

Contrary to the majority's theory that the FEC's prosecutorial discretion is unreviewable, precedent holding *Chaney* inapposite to FECA applies no less to non-enforcement decisions that Commissioners frame in discretionary terms.  In *DCCC*, this court held that deadlocks at the "reason to believe" stage are reviewable even if cast as exercises of prosecutorial discretion.  831 F.2d at 1133-34.  Rebuffing the Commission's invocation of *Chaney*, we explained that, "[b]ecause § [30109](a)(8)(A) provides broadly for court review of an FEC order dismissing a complaint, we resist confining the judicial check to cases in which . . . the Commission 'act[s] on the merits.'"  *Id.* (second alteration in original) (citation omitted).  We reaffirmed our *DCCC* holding the following year in *Common Cause v. FEC*, emphasizing that reviewability was not limited to "deadlock dismissals which run contrary to General Counsel's recommendations based on clear legal precedent," but extended to those that run contrary to "recommendations based on the General Counsel's less definitive assessment of what the law requires in light of the factual allegations in the case"—even though the latter involved more contextual and discretionary judgments.  842 F.2d 436, 449 (D.C. Cir. 1988).  Similarly, in *Orloski*, which has for decades set the standard for review of a Commission decision not to investigate, we explained that a decision dismissing a complaint "is 'contrary to law'" even "under a permissible interpretation of the statute" if it involves "an abuse of discretion."  795 F.2d at 161.

*Second*, the majority erroneously—if somewhat ambivalently—says that the FEC's enforcement discretion is not only unreviewable, but that it broadly shields other, non-discretionary grounds from review.  That contradicts *Akins*' recognition that, even when the FEC has "discretion about whether or not to take a particular action," aggrieved parties can "complain that the agency based its decision upon an

8

improper legal ground."  524 U.S. at 25.  "If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case—even though the agency . . . might later, in the exercise of its lawful discretion, reach the same result for a different reason."  *Id.*  Because "we cannot know that the FEC would have exercised its prosecutorial discretion in this way" in the absence of the erroneous ingredients, we review the legal ground even if the discretionary ground is legitimate, and remand if the former is tainted by error.  *Id.*

In my original dissent, I thought my disagreement with the majority on this point might be confined to the facts before us.  We agreed that "[t]he interpretation an agency gives to a statute is not committed to the agency's unreviewable discretion" and therefore that, "if the Commission declines to bring an enforcement action on the basis of its interpretation of FECA, the Commission's decision is subject to judicial review to determine whether it is 'contrary to law.'"  *CREW*, 892 F.3d at 441 n.11.  My colleagues thought the blocking Commissioners made no legal decision, while I thought they drew a legal conclusion that was contrary to FECA—namely, that there was no "reason to believe" CHGO may have operated as an unregistered "political committee."  *See id.* at 443 (Pillard, J., dissenting).  Elsewhere, however, the majority was more sweeping.  It said that review was unavailable under FECA unless "the agency's action was based *entirely* on its interpretation of the statute," suggesting that any discretionary reason could insulate a dismissal from review, even if it were based on or appended to statutory interpretations that were "contrary to law."  *Id.* at 441 n.11 (majority opinion) (emphasis added).  Similarly, it opined that "even if some statutory interpretation could be teased out of the Commissioners' statement of reasons," the action would not be subject to judicial review, because "[t]he law of this circuit 'rejects the

9

notion of carving reviewable legal rulings out from the middle of non-reviewable actions.'"  *Id.* at 441-42 (quoting *Crowley Caribbean Transport, Inc. v. Pena*, 37 F.3d 671, 676 (D.C. Cir. 1994)).

To the extent that the majority meant that any mention of enforcement discretion renders otherwise-reviewable Commission action unreviewable, it misread the cases it cited. Even if the majority were right that enforcement discretion is an unreviewable *reason* for dismissing complaints, Commission decisions to dismiss complaints are undeniably reviewable *actions* under the plain text of FECA (confirmed by decisions of the Supreme Court and this circuit).  The cases on which the majority relies differ from our case in that they concern unreviewable categories of agency action—for instance, actions governed by *Chaney* (such as *Crowley*'s waiver denial, 37 F.3d at 676), or actions as to which a statute explicitly strips courts' jurisdiction (as in *Association of Civilian Technicians, Inc. v. Federal Labor Relations Authority*, 283 F.3d 339, 341-42 (D.C. Cir. 2002)).  *See also ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 281 (1987) (the agency's "formal action, rather than its discussion," was "dispositive," because the challenged action was unreviewable regardless of the reasons given for it).  Those cases merely mean that if an agency justifies an unreviewable action with a legal reason, the action itself does not thereby become reviewable.  Likewise, however, if an agency justifies a reviewable action with a discretionary reason—as the blocking Commissioners purported to do here—the action itself does not thereby become unreviewable.  "[J]udicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967).  Whereas in *Association of Civilian Technicians*, for example, there was "'clear and convincing evidence' of

10

Congressional intent to preclude judicial review," 283 F.3d at 342 (quoting *Abbott Labs*, 387 U.S. at 141), congressional direction here is to the contrary. The majority does not explain how one drop of discretion transforms a reviewable action into an unreviewable one.

Whatever the majority intended, its holding has already been interpreted to allow a perfunctory recitation of "prosecutorial discretion" to shield legal holdings from the "contrary-to-law" review FECA provides. In *Citizens for Responsibility & Ethics in Washington v. FEC* (*CREW/New Models*), the district court concluded (with evident reluctance) that the panel majority opinion in this case "holds that the Controlling Commissioners' legal analyses are reviewable only if they are the *sole reason* for the dismissal of an administrative complaint." No. 1:18-cv-00076-RC, 2019 WL 1429552, at *8 (D.D.C. Mar. 29, 2019). In the deadlock under review in *CREW/New Models*, the blocking Commissioners conducted extensive legal analysis explaining why they believed the group at issue was not a "political committee," in part because they thought it lacked a "major purpose" of nominating or electing candidates for federal elections. Joint App'x (J.A.) 108-21, *CREW/New Models*, 2019 WL 1429552. The last sentence of the thirty-two-page Statement of Reasons added the drop of discretion: "For these reasons, and in exercise of our prosecutorial discretion, we voted against finding reason to believe that New Models violated the Act by failing to register and report as a political committee and to dismiss the matter." *Id.* at 121 (footnote omitted). The 139th and final footnote of the Statement of Reasons said that "proceeding further would not be an appropriate use of Commission resources." *Id.*

When CREW challenged as contrary to FECA the blocking Commissioners' statement that there was no reason to

11

believe that New Models was a political committee, the FEC argued and the district court agreed that our panel majority's opinion in this case was dispositive. The district court read our opinion to mean that case "beg[an] and end[ed] with the Controlling Commissioners' prosecutorial discretion," even though "the Controlling Commissioners' decision at issue [t]here involved a robust interpretation of statutory text and case law, with a brief mention of prosecutorial discretion sprinkled in." *CREW/New Models*, 2019 WL 1429552, at *6-7. I had anticipated that courts would at least continue to review undisputedly legal analyses, but the *CREW/New Models* district court read our panel's decision to "squash this approach." *Id.* at *7. The destructive promise of the panel's approach has a broader reach, too: CREW reports that the Commissioners have cited prosecutorial discretion in every statement of reasons for no "reason to believe" since the district court decision in this case. Pet. Reh'g En Banc 14.

*Third*, the majority made another significant misstep on a point our circuit has not yet squarely addressed, but which also warrants resolution: It treated a deadlock at the reason-to-believe stage as an exercise of enforcement discretion, while FECA requires at least four Commissioners to concur for their enforcement discretion to be operative as such. This matters because, as we have recognized, the Act contemplates some engagement with the merits of the questions on which the Commission votes. The statute forces that engagement by making the discretionary exit ramp accessible only to a bloc of at least four Commissioners. The majority requirement is in the Act, and its application to dismissing a case in an exercise of discretion at the reason-to-believe stage is spelled out in Commission guidance. The statute recognizes a "vote to dismiss," 52 U.S.C. § 30109(a)(1), and says that "[a]ll decisions of the Commission with respect to the exercise of its duties and powers under the provisions of this Act shall be

12

made by a majority vote of the members of the Commission," *id.* § 30106(c). When presented with a General Counsel recommendation, the Commissioners vote on whether there is or is not reason to believe that a violation may have occurred. Alternatively, "[p]ursuant to an exercise of its prosecutorial discretion, the Commission may dismiss a matter," but only when, "in the opinion of *at least four Commissioners*, the matter does not merit further use of Commission resources." FEC, *Guidebook for Complainants and Respondents on the FEC Enforcement Process* 12 (May 2012) (emphasis added), https://transition.fec.gov/em/respondent_guide.pdf. If a complaint passes through all the prescribed checkpoints, from a reason-to-believe vote to a probable-cause vote, together with conciliation efforts at one or both stages, the statute only then confers discretion on fewer than four members to halt the case. It provides that "the Commission *may*, upon an affirmative vote of 4 of its members, institute a civil action for relief," meaning that three may decide not to move forward with a civil action. 52 U.S.C. § 30109(a)(6)(A) (emphasis added). As FECA frames it, if the Commission is evenly divided at *that* stage, there is no review. But this case stalled at the earlier, reason-to-believe stage, and only three voted "no" on that question, so that action was not operative as an exercise of the Commission's enforcement discretion.

FECA's effectiveness depends on the FEC's duty to engage with complaints. Congress created the Commission to correct for underenforcement of campaign finance laws, even as it sought to curb potential partisan excesses by channeling citizen complaints to the FEC as the first arbiter. Several authorities have implicitly or expressly recognized that duty. The Supreme Court has described the complaint system as "ask[ing] the FEC to find [whether a respondent] . . . had violated the Act." *Akins*, 524 U.S. at 16. The FEC acknowledged in its briefing that it is "required" to "determine

13

whether any civil FECA violations have occurred." Appellee Br. 6. And in *Chamber of Commerce*—which the panel does not address—we acknowledged the obligation to pass on the merits of a complaint when we held that the Commission's unwillingness to apply the law violates FECA. 69 F.3d at 603. There, we said that "it would be easy to establish" that agency action refusing to process a potentially meritorious case "was contrary to law; the Commission's refusal to enforce would be based not on a dispute over the meaning or applicability of the rule's clear terms, but on the Commission's unwillingness to enforce its own rule." *Id.* If three Commissioners could vote "no" at the reason-to-believe stage on grounds of prosecutorial discretion, there would be little to check "the Commission's unwillingness to enforce its own rule," *id.*, even if the panel decision's other errors were corrected.

Giving a non-majority of Commissioners enforcement discretion removes an institutional check on political deadlock that Congress wrote into FECA. The power of a *majority* of Commissioners to dismiss a complaint at the reason-to-believe stage as an exercise of enforcement discretion does not implicate the same concern about partisan underenforcement. Requiring four Commissioners to agree to discretionary dismissals keeps complaints from being jettisoned by a partisan bloc: The Commission's structure means that a vote of four or more Commissioners is necessarily bipartisan; if a three-member "no" vote cannot be justified on the merits, a court can call on the Commission to either move forward with its investigation or cede enforcement to a private party. Non-majority discretion to block action is fatal to FECA if that enforcement discretion is—as the panel would have it—both judicially unreviewable, and effective in shielding all other grounds from review. I fear that FEC Chair (then-Vice Chair) Weintraub did not exaggerate when she described the panel decision as giving the Commission "a superpower . . . to kill

14

any FEC enforcement matter, wholly immune from judicial review." FEC, *Statement of Vice Chair Ellen L. Weintraub on the D.C. Circuit's Decision in* CREW v. FEC 1 (June 22, 2018), https://go.usa.gov/xmWC2.

*CREW/New Models* provides a stark illustration of that superpower. As Chair Weintraub said about that case, "that 139th footnote was all that mattered. They literally could have skipped everything before and after it and the statement would be equally bulletproof under" the majority opinion. FEC, *Statement of Chair Ellen L. Weintraub on the D.C. District Court Decision in* CREW v. FEC (New Models) 3 (Apr. 15, 2019), https://go.usa.gov/xmWC4. The district court itself described the law it applied as a "'magic words' standard," noting that it was "sympathetic to Plaintiffs' concerns" about such a standard. *CREW/New Models*, 2019 WL 1429552 at *1. But it concluded that, per the panel decision in this case, "because the Controlling Commissioners invoked prosecutorial discretion, the Court is also foreclosed from evaluating the Controlling Commissioners' otherwise reviewable interpretations of statutory text and case law." *Id.* at *10. If such an invocation does bar evaluation of the Commissioners' legal conclusions, it guts the case-by-case approach the FEC has adopted for determining when groups qualify as "political committees." The Commission has declined to define "political committee" by rule, choosing instead a "fact-intensive" inquiry into each group's "overall conduct." Political Committee Status, 72 Fed. Reg. 5,595, 5,601-02, 5,597 (Feb. 7, 2007). If it needs neither promulgate rules nor adjudicate the merits of individual cases, any partisan, non-majority bloc of the Commission can indefinitely avoid developing law defining political committees.

FECA cannot be interpreted to, in effect, invite any three-member bloc of the Commission to refuse to consider

15

complaints, free from the judicial scrutiny Congress wrote into
the statute.  I understand my colleagues' hesitation to review
this case *en banc* given that some of the strongest arguments
that the blocking Commissioners acted contrary to law did not
appear in the briefs, and that CREW's panel briefs were not
entirely consistent with its petition for rehearing *en banc*.
*Compare* Appellant's Br. 26 (asserting that "the FEC d[id] not
reach the merits but dismisse[d] based on its prosecutorial
discretion"), *with* Pet. Reh'g En Banc 2-3 (describing the
Commissioners as making a "decision that there was no reason
to believe CHGO violated the FECA . . . based on their
interpretation of the law").  But other important issues at stake
in this case were unbriefed simply because the parties could not
anticipate that the majority would adopt a novel position that
no party advanced.  I would not wait for a perfect case to come
along to correct the majority's interpretation.